DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Katherine L. Russell, | ) | |
| | ) | CASE NO. 4:10 CV 2179 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | O R D E R |
| Christopher Davis, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I. Introduction

The plaintiff, Katherine L. Russell, the mother of the decedent Jason Miller and in her capacity as the administratrix of the estate of Jason Miller and in her individual capacity, has brought a Monell claim for money damages and injunctive relief against St. Clair Township, located in Columbia County. Additionally, the plaintiff prosecutes separate constitutional claims against three St. Clair Township police officers, Christopher Davis, Steven Brophey, and Donald Hyatt, individually and in their official capacities as police officers of St. Clair Township.

The initial thrust of the plaintiff's action is the failure of defendants Davis and Brophey to prevent the suicide of the plaintiff's son, Jason Miller, who shot himself with a firearm after he had been arrested pursuant to an arrest warrant, handcuffed and placed in a police cruiser.

Against that unfortunate and tragic set of circumstances, the individually-named police officer defendants have moved to dismiss the complaint based on a claim of qualified immunity.

II. The Judicial Mandate to Consider Claims of Qualified
Immunity at the Outset of the Litigation

*Saucier v. Katz*, 533 U.S. 194 (2001) instructs that questions of qualified immunity

(4:10 CV 2179)

should be resolved at the earliest possible state in the litigation. Additionally, a two-prong test must be applied to a qualified immunity analysis. The first issue focuses on whether the alleged facts, taken in a light most favorable to the party asserting the injury, demonstrates a violation of a constitutional right. If not, the inquiry ends and the motion for a dismissal based on qualified immunity should be granted. On the other hand, if a constitutional violation could be established by examining the facts alleged in a light most favorable to the party asserting the constitutional violation, the second step of the qualified immunity violation focuses on whether "the right was clearly established." If so, the qualified immunity challenge fails. However, if the right was not clearly established, the qualified immunity analysis leads to a dismissal of the claims against the public officials, such as the police officers in this case.

### III. Do the Alleged Facts Considered in a Light Most Favorable to the Suicidal Jason Miller Establish a Constitutional Violation

The Court turns to an examination of the allegations of the complaint[1] in search for an alleged constitutional violation.

The complaint states in relevant part as follows:

> 7. On September 5, 2008, St. Clair Township Police Officers arrested Jason Miller at the Wal-Mart in Calcutta for shoplifting. At that time Jason Miller gave the arresting officers his brother Christopher Miller's identification information instead of his own. Jason Miller was arrested for Petty Theft and released with a Court date of September 8, 2008. Jason Miller failed to appear in Court on September 8, 2008.
>
> 8. On September 8, 2008, Christopher Miller and his wife, Trisha Miller, met with representatives of the Division and advised

---

[1] Doc. 1, ¶¶ 7-21.

(4:10 CV 2179)

that he had not committed the shoplifting and petty theft offense at Wal-Mart, but that his brother Jason had used his personal information to escape prosecution for this matter.

9. On September 9, 2008, Christopher and Trisha Miller told officers of the Division that Jason Miller was addicted to pills and heroin, and that they would fully cooperate with the police to help Jason Miller. Christopher Miller asked the Division to be careful in apprehending and looking for Jason Miller, as he had indicated that he was going to commit "suicide by cop," wherein he would commit suicide if and when he was confronted by police and arrested.

10. Family members, including Katherine L. Russell, Christopher Miller, and Trisha Miller, did everything they could to make sure that Jason Miller would be peaceably and safely arrested by the Division. Katherine Russell actually drove her son, Jason Miller, to the Division's headquarters on September 12, 2008, in order for him to safely turn himself in. The Division, however, had its officers attending an area high school football game, and therefore, did not take him into custody at that time.

11. On September 12, 2008, Trisha Miller called Officer Scott Mick of the St. Clair Township Police Department and stated that Jason Miller wanted to turn himself in for outstanding warrants, that he had been at the police department earlier in the day, and that he was at his mother's residence waiting for the police.

12. Officer Mick then called Sergeant Steven Brophey and advised him where Jason Miller was located. Sergeant Brophey and Officer Christopher Davis, traveling in separate patrol cars, located Mr. Miller in the area they were advised he would be located. Officer Davis was familiar with Jason Miller and knew what he looked like. At the time of his arrest, Mr. Miller was wearing a white t-shirt and tight-fitting jeans, and carrying a jacket. The officers took the jacket that he was carrying and had him lean over the car, where they handcuffed him with his hands behind his back. The officers then placed Mr. Miller in Davis's car. They left Mr. Miller in the patrol car unattended while they returned to Sergeant Brophey's vehicle and looked through Mr. Miller's jacket.

3

(4:10 CV 2179)

> 13. While handcuffed in Davis's patrol car, Mr. Miller shot himself in the head with a gun that he had on his person. According to the Police Incident Report, while Mr. Miller was handcuffed and sitting in the rear of the police cruiser, the officers "heard a pop coming from the area of the car" and "observed Mr. Miller in the back seat bleeding from the head area with some type of gun laying on the side of his right leg."
>
> 14. The Investigation Report indicates that the bullet entered Jason Miller's body inside the mouth and exited the left rear of Jason miller's head, causing his death.
>
> 15. The gun that Jason Miller used to shoot himself was identified as a Ruger .357 caliber with approximately an 8 1/2-inch barrel.
>
> 16. Upon information and belief, Sergeant Brophey and Officer Davis were aware prior to arresting Jason Miller that he was addicted to drugs, mentally ill, and had expressed an intention to commit suicide upon his arrest. Officer Davis had personal knowledge of Mr. Miller from past experiences at the county jail. In addition, officers in the Division had previously been informed of Mr. Miller's mental condition and suicidal tendencies prior to his arrest, and either informed the arresting officers of these facts or were reckless and deliberately indifferent in failing to do so.[2]

---

[2]Paragraph 16 of plaintiff's complaint alleges that Sergeant Brophey and Officer Davis were aware that Jason Miller had expressed an intent to commit suicide upon his arrest. For the purpose of analysis of defendants' motion, plaintiff may satisfy the plausibility standard of *Ashcroft v. Iqbal,* -- U.S.--, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), by pleading facts "upon information and belief" when the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference plausible. *Antioch Litigation Trust v. McDermott Will & Emery LLP,* 738 F.Supp.2d 758, 765 (S.D. Ohio 2010) ("As an initial matter, Defendant claims that Plaintiff's allegations that are based "upon information and belief" . . . and allegations that use the term "appear" . . . should be dismissed because they are speculative. However, Defendant fails to cite any legal authority supporting its contention. Moreover, qualifying words such as "upon information and belief" and "appear" are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts. *See eg Dudzienski v. Gordon Food Serv.,* . . . 2008 WL 4372720, at *2 . . . (N.D. Ill. March 19, 2008) (denying defendant's argument

(4:10 CV 2179)

>17. Although the officers claimed in their reports that Officer Davis patted down Jason Miller prior to placing him in the patrol car, the size of the gun used and the fact that Mr. Miller was wearing tight-fitting clothing makes it physically impossible for either officer to have conducted a pat-down of his person without discovering the weapon. The fact that Mr. Miller was able to access the weapon while his hands were handcuffed behind his back means that the gun must have been located in an easily accessible area on his person.
>
>18. But for the officers' failure to pat down Mr. Miller and their subsequent failure to supervise him while he was unattended in Officer Davis's patrol car, he could not have fatally shot himself while in the officers' custody.
>
>19. The actions of the officers in failing to pat down or supervise Mr. Miller following his arrest are indicative of their own deliberate indifference to Mr. Miller's rights and safety, as well as their lack of minimally necessary training by St. Clair Township and Police Chief Hyatt in the detention, arrest, and safeguarding of individuals who are addicted to drugs, mentally ill, and/or suicidal.
>
>20. The actions of the individual officers were contrary to the actions that a reasonably trained police officer would take to detain, pat down and arrest Jason Miller under the circumstances. Jason Miller's death was a direct and proximate result of the Defendants' deliberate indifference, recklessness, and wanton misconduct, and of St. Clair Township and Police Chief Hyatt's deliberate indifference, recklessness, and wanton misconduct in failing to train their officers with respect to the detention, pat-down, arrest, and supervision of a person addicted to drugs, mentally ill, and/or suicidal. The Defendants all also directly violated Jason Miller's civil and statutorily protected rights.

---

that Twombly prohibits allegations in the complaint that are made upon "information and belief" as speculative). "); *Lewis v. Taylor*, 2010 WL 3875109 (S.D. Ohio) (allegations upon "information and belief" sufficient from which a court may infer a plausible cause of action) *;see also Banker v, County of Livingston*, 2011 WL 1331253 at * 4 (W.D.N.Y.) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

(4:10 CV 2179)

> 21. The Defendants deliberate indifference, recklessness, and wanton misconduct caused Jason Miller's fear, emotional distress, suffering, and loss of life, and caused the Plaintiff and other family members expense, lost support, pain and suffering, loss of society, loss of companionship and loss of assistance.

### IV. A Summary of the Plaintiff's Opposition to the Motion to Dismiss based on Qualified Immunity

Counsel for the plaintiff, in opposition to the motion to dismiss, contends:

"The facts alleged in the Complaint describe a violation of clearly established constitutional rights by the individual officers who arrested the decedent, Jason Miller, by failing to take reasonable precautions in light of the known risk that he would attempt to harm himself. The Sixth Circuit has held for nearly two decades that failing to protect a pretrial detainee in light of a known suicide risk violates the detainee's constitutional rights. *See Barber v. City of Salem*, Ohio, 953 F.2d 232, 239-40 (6th Cir. 1992) ("[T]he proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under Section 1983 for a [pretrial] detainee's suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take such adequate protections amounted to deliberate indifference to the decedent's serious medical needs."

Continuing, plaintiff's counsel asserts that three related allegations summarized in the complaint are sufficient to defeat the motion to dismiss based on qualified immunity and advanced in support of the three-named police officers:

(1) The defendants were aware prior to arresting Jason Miller that he intended to commit suicide in police custody.

(2) The defendants failed to take any reasonable precautions to prevent Miller from

6

(4:10 CV 2179)

harming himself.

(3) The decedent was able to commit suicide in police custody because of the Defendants' failure to take precautions.

### V. A Summary of the Defendants' Argument for a Dismissal based on Qualified Immunity

First, counsel for the individual police officers asserts that there is no constitutional requirement pursuant to the Fourth Amendment for an immediate and thorough search of an arrested person such as Jason Miller.

Second, the Eighth Amendment does not apply to pre-trial detainees, but rather it is under the Fourteenth Amendment Due Process Clause that a pre-trial detainee has a right to adequate medical treatment.

Third, the proper inquiry with respect to a due process claim advanced for a pre-trial detainee is whether the conditions or restrictions amounted to a punishment of the detainee and cites the favorable outcome for the sued officers in the case of *Watkins v. Battle Creek*, 273 F.3d 682 (6th Cir. 2001) which involved the ingestion of cocaine under alleged facts which were insufficient to establish deliberate indifference.

In *Danese v. Asman*, 875 F.2d 1239 (6th Cir. 1989) found that there was no constitutional right for a detainee to be screened correctly for suicidal tendencies and the right to have steps taken that would have prevented suicide. In *Rich v. City of Mayfield Heights*, 995 F.2d 1092, 1096 (6th Cir. 1992) the Sixth Circuit declared that there is "no clearly established right to be protected from suicide."

Continuing, in response to the allegation that the officers were aware that "he was going

7

(4:10 CV 2179)

to commit suicide by cop," counsel for the defendants asserts[3]:

> Plaintiff alleges that the officers were aware that "he was going to commit 'suicide by cop'" on September 9, 2008. (Complaint, ¶9) Suicide by cop is when an individual, confronted by law enforcement, will act in a manner designed to force law enforcement to use deadly force. Plaintiff further alleges that the officers were aware that Jason Miller was addicted to drugs (pills and heroin) and mentally ill. (Complaint, ¶¶9, 16)
>
> In contrast, Miller had voluntarily gone to the police station on September 12, 2008 to turn himself in. (Complaint, ¶10) When the defendants' first encountered Miller later that evening, he was cooperative and non-threatening. Nonetheless, he was placed in handcuffs behind his back, without incident. (Complaint, ¶12) It is undisputed that the prior arrest and outstanding warrants for Jason Miller were for non-violent offenses (theft and contempt). There is no allegation in the complaint that the defendants were aware that Jason Miller had attempted suicide in the past. There is no allegation in the complaint that Miller indicated any intent to commit suicide to any of the defendants that evening. There are also no facts establishing that Miller was under the influence of any drugs at the time of his arrest, or exhibiting signs of suicidal intention.
>
> In order to satisfy the deliberate indifference standard, a defendant must know of and consciously disregard an excessive risk to the detainee's health or safety. See Farmer v. Brennan, 511 U.S. 825, 837-38, 128 L. Ed. 811, 114 S. Ct. 1970, 1979 (1994). In this case, Miller did not show a strong likelihood that he was going to attempt suicide such that failure to take precautions amounted to deliberate indifference to his serious medical needs. (See Barber v. City of Salem, Ohio, 953 f.2d 232, 239-40 (6th Cir. 1992). In fact, all of the facts establish that Miller acted contrary to his alleged prior threat to commit suicide by cop.

Finally, counsel for the individual defendant police officers concludes with the proposition that there is no clearly established constitutional right protecting an arrested person

---

[3]Doc. 14, pp. 10-11.

8

(4:10 CV 2179)

and requiring the arresting police officer to search the arrestee so as to prevent him or her from committing suicide. Against that background, there may be evidence establishing that the arresting police officers, Davis and Brophey, had knowledge of Jason Miller's prior threat to commit suicide when and if arrested.

## VI. The Court's Ruling

After giving the plaintiff the benefit of doubt with respect to the phrase "upon information and belief" as appears in paragraph 16 of the complaint, the Court holds that it is premature to make a final ruling on the individual defendants' request for a dismissal based on qualified immunity. Rather, the Court opens fact discovery for a period of four months with fact discovery to be concluded by August 26, 2011.

The Court will then entertain motions for summary judgment based on the claims of qualified immunity. The motion for summary judgment shall be filed by Friday, September 9, 2011. Response briefs may be filed by September 30, 2011 and reply briefs, if any, must be filed by October 7, 2011.

(4:10 CV 2179)

The motion to dismiss by defendants Davis, Brophey and Hyatt, based on qualified immunity is DENIED, but without prejudice to renew the same upon the completion of fact discovery by motions for summary judgment.

       IT IS SO ORDERED.

| | |
|---|---|
|  April 25, 2011 |  */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |